GRISBAUM, Judge.
Appellees, Robert and Vanda Clifford, filed suit against appellant, John H. Baker, d/b/a Oasis Pools, seeking recision of a contract by which appellant agreed to build a swimming pool in appellees’ backyard. The Cliffords alternately requested damages sufficient to repair certain deficiencies in the pool, the damages done to their home, and for embarrassment. The trial court found in favor of appellees. Mr. Baker alleges on appeal that the cause of the pool’s defects was sinking of the ground rather than faulty construction and that he was improperly held personally liable as he was acting as an agent of Oasis Pools, Inc. Appellees answered the appeal seeking an increase in the judgment. We affirm in part and reverse in part the judgment of the trial court.
Mr. and Mrs. Clifford, upon deciding to have a pool built in the backyard of their home in Gretna, Louisiana, contacted Mr. Baker who met with the couple at their home. On a second meeting on May 16, 1980, a contract was signed by all three parties. Construction soon began on the pool which was finished July 3, 1980. Ap-pellees paid the full contract price of $12,-202 plus' $800.70 for excavation. However, various defects surfaced during or shortly after construction of the pool. There were several cracks in the decking and in the coping, “cold poured” concrete, irregular “swimout”, gunite accidentally sprayed on the house and garage, and tiles on angles. *1073 A pool alarm was promised as “lagniappe” on the contract but was never delivered.
The initial issue is whether the defects of the pool were caused by construction errors or sinking of the pool due to the subsidence of the soil. It is undisputed that when the pool was inspected for litigation purposes the deep end was lower than the rest of the pool. The dispute remains whether the pool was built out of level or whether the pool had in fact sunk. There were also other defects unrelated to the sinking of the pool.
Under Louisiana jurisprudence the agreement for the construction of this pool was a building contract. Therefore, the plaintiff has the burden to show the defects are due to poor workmanship or defects of material rather than any latent defects in the soil or other cause for which the builder is not responsible. Unverzagt v. Young Builders, Inc., 207 So.2d 405 (La.App. 3d Cir.1967); Wurst v. Pruyn, 250 La. 1109, 202 So.2d 268 (La.1967).
Mr. Baker testified that in determining whether the soil was sufficient to build the pool in, he relies on the backhoe operator who excavates the area. He stated the operator has gauges on his equipment which indicate the quality of the soil for the purposes of building a pool. No problems were indicated in the instant case. Mr. Baker also testified he has built other pools in the same vicinity without building on pilings and presumably has not had the same degree of problems. He stated he paid a man approximately $500 for leveling the pool before installing the coping. He added that he was not responsible for subsurface draining as the contract specified the owner was. Mr. Baker stated he had offered to put in anchors for a rope or pay for the installation as he felt it was the right thing to do. He stated footprints visible on the bottom of the pool could be sanded out rather than plastered over. Mr. Baker admitted the “cold pour” is not satisfactory and had been willing to rectify that. However, he denied the other allegations of unworkmanlike construction. Mr. Baker felt $2236 would be sufficient to rectify any problems with the pool.
Robert Gibbens, of Gibbens Pool, Inc., testified as an expert on behalf of appellees. Mr. Gibbens had examined the pool for defects on behalf of the Cliffords and presented them with a written estimate of $10,366 for his company to correct the work. Mr. Gibbens testified he did not consider the pool acceptable for a number of reasons. He stated there was an insufficient number of expansion joints around the deck and skimmer and such joints would have prevented some of the cracking. He opined the pool was built out of level. However, testifying on behalf of appellant as experts, Ernest Carl, of Century Pools, Inc., stated the failure of the ground caused the swimming pool to sink and Steve Bergeron agreed the pool had not been built out of level but had sunk. The trial court recognized in its reasons for judgment that Mr. Carl and Mr. Bergeron agreed there were problems with the pool evident on their inspection. However, they did not testify the problems were due to poor workmanship. Rather, both men felt cracking is to be expected around pools in the New Orleans area. However, Mr. Carl testified he never placed his expansion joints more than ten feet apart. The expansion joints in the instant case were some 20 feet apart. Mr. Bergeron agreed the appearance of cracks within several weeks of construction would be somewhat unusual. Mr. Carl felt the repairs could be done for approximately $2500 to $3500. Mr. Bergeron believed the cost of material and labor to raise the deep end would cost between $3500 and $4000.
The evidence establishes, as Mr. Baker admits, the “cold pour” concrete is not satisfactory and must be redone. The evidence also establishes that expansion joints should have been placed more closely together which could possibly have prevented some of the ensuing cracking. The swimout should also be redone because of the irregular shape. Footprints in the bottom of the pool should be sanded out. The pool alarm should be given or an equal price given to the Cliffords. It seems from the testimony it is more likely the pool sank than it is that it was built out of level. However, there *1074 was no definitive testimony at trial to explain the cause of the sinking of the pool. The fact the sinking occurred so soon after construction indicates a deficiency on the part of the builder. Appellant alleged on appeal that he was exculpated according to the contract which stated the homeowners warranted the site to have “adequate bearing”. However, the contractual provision merely provided for an extra charge to the homeowner if the contractor was required to provide additional material and labor to stabilize the site. As stated in Wurst, supra, the contractor has expert knowledge of such things as the condition of a site, or should have, and he must bring these things to the attention of the owners. There does not seem to have been any latent defects in the soil in the Cliffords’ backyard to hold Mr. Baker harmless as he testified he was familiar with the type of soil present in that area. The trial court awarded $4000 to compensate appellees for the defects it found to exist in the pool. It awarded an additional $260 for the pool alarm which was not provided. We cannot say the trial judge was clearly wrong in so holding.
The second issue is whether appel-lees knew or should have known that Mr. Baker was acting as an agent of Oasis Pools, Inc. The trial judge cast Baker in judgment individually setting out the following reasons for judgment:
“In connection with the liability of the defendant, John H. Baker, personally, the Court finds that although Oasis Pools was in fact a corporate entity at the time the contract was executed, no written or verbal disclosures were made to plaintiffs to identify the corporate status of the defendant, and in the opinion of the Court the plaintiffs had no knowledge that they were dealing with a corporation, but assumed that they were contracting with John Baker in an individual capacity for the defendant company.”
It is apparent that in reaching this conclusion, the trial judge made a credibility call discounting testimony of Mr. Baker and believing the testimony of the appellees. The appellate court may not reverse findings of fact unless they are clearly wrong and this court addresses its inquiry only to the written evidence and the testimony of the Cliffords.
First, it is unquestioned that Oasis Pools was a corporation in existence under the name of Oasis Pools, Inc., at all pertinent times. The initial contact between the parties was a telephone call by Mrs. Clifford to Oasis Pools inquiring as to the construction of a swimming pool at her home. Next was a meeting at the Cliffords’ home by Mr. Baker and the Cliffords with Mrs. Clifford being the prime participant on their side. At that meeting there was a preliminary discussion as to the type of pool desired and the specifications. As a result, the Clif-fords were furnished with a written estimate which contained at the top of the legend “Oasis Pools” and at the bottom of the specifications the inscription “Oasis Pools, Inc., by_” At this meeting Baker presented the Cliffords with his card which showed Oasis Pools with the same logo as contained on the estimate sheet and “John H. Baker, General Manager.” At the next meeting- the parties agreed to a swimming pool construction agreement which document also contained the Oasis Pools logo at the top and at the bottom “Oasis Pools, by _” which was signed by John H. Baker without any notation as to his capacity. On the rear of that document it was noted that the agreement was not binding on the contractor unless and until the agreement is accepted by an authorized officer thereof.
Referring to the testimony of the Clif-fords, although they testified that there was never any mention of a corporation made to them, it is conceded that they did see the documents above referred to and read them. It is further testified that their concern was not whether they were doing business with a corporation or an individual or some other business entity, but they were concerned they would get a first class job and they were aware that Mr. Baker had told them that another person had an interest in the business. However, they felt that Baker meant that he and the other *1075 person were owners, not officers of a corporation.
Appellees refer us to several cases which stand for the proposition that an agent, acting on behalf of a corporation, must disclose his status as agent to avoid personal liability and must identify his principal. Pat’s Furniture Showrooms, Inc. v. Furniture Warehouse of Houma, Inc., 392 So.2d 145 (La.App. 1st Cir.1980); Lagniappe of New Orleans, Inc. v. Denmark, 330 So.2d 626, 627 (La.App. 4th Cir.1976); Chartres Corporation v. Twilbeck, 305 So.2d 730 (La.App. 4th Cir.1974); Olympic Electrical Services v. Craig, 286 So.2d 182 (La.App. 4th Cir.1973). There appears to be no dispute as to the principles of law involved, the question here is simply the facts to which that law is applied, as occurred in J.D. Doiron, Inc. v. Lundin, 385 So.2d 450 (La.App. 1st Cir.1980). This court concludes the trial judge is clearly wrong when he states there are no written disclosures made to appellees to identify the corporate status of the appellant and because this court is impressed with the fact these appel-lees were not specifically relying on the individual nature of Oasis Pools, that is, owned by Baker individually rather than a corporate organization, this court concludes there is sufficient proof shown to relieve Baker of personal liability.
For the reasons assigned we affirm that part of the trial court judgment in favor of appellees, Mr. and Mrs. Robert Clifford, in the full sum of $4250 together with the interest, costs, and expert fees in the amount of $150 for each expert testifying in this matter. We reverse that part of the trial court judgment finding appellant, John H. Baker, d/b/a Oasis Pools personally liable and cast in judgment instead Oasis Pools, Inc. The costs of this appeal are to be shared equally by appellees and appellant.
AFFIRMED IN PART AND REVERSED IN PART.